**PRECISION COMMUNICATIONS, INC.**

v.

**Maurice RODRIGUE et al.**

Supreme Judicial Court of Maine.

Argued Sept. 8, 1982.

Decided Oct. 13, 1982.

Fales & Fales, P.A., Stephen B. Wade (orally), Lewiston, for plaintiff.

Norman R. Croteau (orally), Lewiston, Hunt, Thompson & Bowie, James Bowie, Portland, for defendants.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

McKUSICK, Chief Justice.

Plaintiff Precision Communications, Inc. ("Precision") brought this action against both the individual defendant Rodrigue and his corporation, Northern Telecommunications, Inc. ("NTI"), seeking to recover $31,-955.14 plus interest allegedly owed for goods purchased.[1] In his appeal from a Superior Court order granting plaintiff's motion for approval of attachment of his real estate pursuant to M.R.Civ.P. 4A, defendant Rodrigue asserts that plaintiff's affidavit in support of his motion failed to set forth specific facts sufficient to warrant a finding that plaintiff has a reasonable likelihood of recovery against him individually. We affirm the Superior Court order.

An affidavit in support of a motion for an attachment must "set forth specific facts sufficient to warrant the required [finding]," M.R.Civ.P. 4A(h), "that there is a reasonable likelihood that the plaintiff will recover judgment . . . in an amount equal to or greater than the amount of the attachment . . . ." M.R.Civ.P. 4A(c). A "reasonable likelihood of success" requires less than a preponderance of the evidence and "connotes mere probability of success or a favorable chance of success." *Northeast Investment Co., Inc. v. Leisure Living Communities, Inc.*, Me., 351 A.2d 845, 851–52 (1976). Describing and adopting the federal interpretation of that standard, we have stated:

> If a claim for which security by means of real estate attachment is requested is not of such insubstantial character that its invalidity so clearly appears as to foreclose a reasonable possibility of recovery, then, such a claim would be within the

"likelihood of success" standard required by the Rule.

*Id.* at 852.

■ Thus, a party seeking approval of attachment has a relatively low hurdle to clear, and the trial judge exercises a correspondingly broad discretion in determining whether the plaintiff has alleged sufficient facts in his affidavit. We will not substitute our judgment for that of the Superior Court; great deference is given to the judgment of the trial court, and only a clear abuse of discretion will warrant reversal of an order approving attachment. *Anderson v. Kennebec River Pulp & Paper Co.*, Me., 433 A.2d 752, 754 (1981).

■ In the case at bar, plaintiff's attachment motion was supported by three affidavits: one by Charles Garabedian, Jr., president of plaintiff corporation; a second by him supplementing the brief allegations of the first; and one by Vince McLaughlin, plaintiff's sales manager, attesting to the truthfulness of Garabedian's supplemental affidavit. Defendant Rodrigue filed an affidavit in opposition to the motion.

Garabedian's affidavits allege that on January 9, 1981, he discussed with Rodrigue, then president, treasurer, and major stockholder of NTI, the possible purchase of NTI by Precision. Rodrigue is said to have complained that Nippon Electric Co., his business's major supplier, "had stopped extending credit to him and that all his business with Nippon Electric was now c.o.d." Anxious to keep NTI "afloat" for long enough to permit Precision to evaluate NTI for purchase, Garabedian agreed to buy parts from Nippon and resell them to NTI on credit, charging only a 10% handling fee. Rodrigue is said to have agreed to repay "immediately upon receipt of payment of the goods." Garabedian's affidavits assert that both Rodrigue and NTI assumed responsibility for paying Precision and that Rodrigue implicitly accepted that arrangement by picking up the first shipment himself and signing the receipt and invoice for that shipment, both of which identified him,

---

1. Defendant raises no question as to the pleadings.

as well as his company, as liable for the contract amount.

In his counteraffidavit, Rodrigue denied that he had ever agreed to assume any individual responsibility for the purchases from Precision. He maintained that two weeks after the January 9 meeting, Garabedian had offered to extend credit to NTI during purchase negotiations. Rodrigue claims to have acted throughout the negotiations solely in his capacity as a corporate officer and never in his individual capacity.[2]

Rodrigue argues that the affidavits submitted by Precision were critically lacking in two respects. First, Rodrigue asserts, the affidavits do not suffice to prove that he entered into a contract to guarantee NTI's debt to Precision. Specifically, Rodrigue denies that Precision has shown either a meeting of minds or consideration. Second, Rodrigue insists that Precision has failed to establish a reasonable likelihood of success because the statute of frauds would bar enforcement of the contract allegedly entered into orally by the parties. He argues that the contract being oral is unenforceable because 1) the price of the goods was greater than $500, bringing the contract within the writing requirement of 11 M.R.S.A. § 2–201(1) (1964), and 2) Rodrigue was acting as a surety, bringing the contract within the writing requirement of 33 M.R.S.A. § 51(2) (1978).

Contrary to defendant Rodrigue's contention, plaintiff's affidavits contained specific facts sufficient to satisfy Rule 4A(h).[3] The affidavits set forth facts from which the Superior Court justice was entitled to find a reasonable likelihood that plaintiff will prevail in persuading the factfinder at trial 1) that the parties had agreed on the individual liability of Rodrigue; 2) that there was detriment to plaintiff that constituted consideration; 3) that the oral contract was enforceable in the face of the requirements of the statute of frauds, because receipt and

acceptance of the goods by Rodrigue in his individual capacity removed the contract from the requirement of 11 M.R.S.A. § 2–201(1); and 4) that Rodrigue was the majority, if not the sole, stockholder of NTI, that the main purpose of Rodrigue's agreement to be personally liable for shipments was his own personal benefit, i.e., to maintain NTI operations until a Precision purchase, and that therefore Rodrigue was not acting as a surety within the meaning of 33 M.R.S.A. § 51(2).

For the foregoing reasons, the entry must be:

Superior Court order approving attachment affirmed.

All concurring.

---

2. The parties never reduced their credit arrangement to writing, and plaintiff did not purchase NTI. According to plaintiff, NTI lost its assets at a secured creditors' sale and is now a corporate shell.

3. The requirement of Rule 4A(h) must be distinguished from the M.R.Civ.P. 56(e) requirement that, to support a summary judgment, affidavits set forth facts that would be admissible in evidence.