Mose C. DiPIETRO

v.

CASCO NORTHERN BANK, et al.

Supreme Judicial Court of Maine.

Argued March 4, 1985.

Decided April 2, 1985.

Potter & Jamieson, Charles D. Jamieson (orally), Saco, for plaintiff.

Perkins, Thompson, Hinckley & Keddy, Douglas S. Carr (orally), John R. Opperman, Philip C. Hunt, Portland, for Casco Northern Bank.

Norman & Hanson, Peter J. DeTroy, III, Portland, for Chapmans.

Before McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

WATHEN, Justice.

Defendants, Casco Northern Bank, N.A. (the "Bank") and Franklin G. Hinckley, appeal from an order of the Superior Court (Cumberland County) denying their motion for dismissal or dissolution of ex parte attachments and trustee processes issued by the Probate Court for plaintiff, Mose C. DiPietro, against the real and personal property of the Estate of Gladys D. Chapman and the Gladys D. Chapman Revocable Trust (the "Revocable Trust"). The Bank is the executor of the Estate of Gladys D. Chapman. The Bank and Mr. Hinckley are the co-trustees of the Revocable Trust. We reverse the denial of the motion to dissolve the ex parte attachments and trustee processes.

## I.

The Bank was appointed executor of the Estate of Gladys D. Chapman on April 22, 1980. Under the terms of Gladys D. Chapman's will, her son Philip F. Chapman, Jr., was given the right:

> As to my land and my buildings at 375 Spring Street, Portland, Maine, my son, Philip F. Chapman, Jr., shall have the opportunity to purchase said property at the appraised value as shown in the Probate Inventory of my estate and within six (6) months of the allowance of my will and the appointment of my executor.

The appraised value of the Spring Street property as shown in the Probate Inventory is $62,500.

Under the terms of the will, the residue of Gladys D. Chapman's estate is given to the trustees of the Revocable Trust. The

Revocable Trust was created in 1965 and amended in 1977. Under the terms of the Revocable Trust, on the death of Gladys D. Chapman, the trustees are to divide the Revocable Trust into three parts: A and B which shall be equal in amount and C which shall be $15,000 less than each of A and B. Part C was for the benefit of Philip F. Chapman, Jr., Geneva B. Chapman (Philip's ex-wife), and Courtney Chapman (Philip's daughter). Fifteen percent of Part C was to be distributed to Geneva Chapman outright. Twenty percent was to be distributed to Courtney Chapman outright. The remaining sixty-five percent was to be held in trust for the benefit of Philip, the net income to be paid to him quarterly or more often at the discretion of the trustees. Further, the trustees are authorized to pay part, all, or none of the principal for Philip's benefit to provide for his general welfare or to buy "real property which shall comprise part of the donor's estate at her death." On Philip's death the principal is to be paid outright to Courtney.

The Revocable Trust contains the following spendthrift clause:

No principal or income payable or to become payable under any of the trusts created by this instrument shall be subject to anticipation or assignment by any beneficiary thereof, or to the interference or control of any creditors of such beneficiary or to be taken or reached by any legal or equitable process of any debt or liability of such beneficiary prior to its receipt by the beneficiary.

On January 25, 1984, plaintiff obtained a judgment in a separate action against Philip in Superior Court (Cumberland County) in the amount of $172,000. On February 21, 1984, the Probate Court (Cumberland County) appointed Courtney Chapman conservator of her father's property. The petition for appointment of a conservator recites that Philip "has demonstrated a complete inability to take care of himself or his affairs. ... His past actions show a complete inability to handle money or any fiscal matters responsibly." Philip appeared before the Probate Court and consented to the conservatorship.

Philip has not purchased the property at 375 Spring Street. Additionally, his conservator, Courtney Chapman, has informed the Bank that she declines to purchase the Spring Street property on his behalf. Title to the Spring Street property has never been transferred from the Estate of Gladys D. Chapman to the Revocable Trust, and the Bank states that it has neither solicited bids for the Spring Street property nor listed the property with a broker.

On May 18, 1984, plaintiff filed a complaint in Probate Court, naming as defendants: the Bank, Mr. Hinckley, the Estate of Philip F. Chapman, Jr., the Estate of Gladys D. Chapman, the Revocable Trust, and Courtney Chapman.[1] The gist of the complaint is that the named defendants have acted improperly in an attempt to prevent plaintiff from collecting his judgment against Philip. Specifically, plaintiff asserts that the named defendants have acted willfully, maliciously, and intentionally to prevent plaintiff from collecting on his judgment and in dissipating the potential assets of the conservatorship estate. Plaintiff accuses the named defendants of fraud, and asserts that the named defendants' actions have created a resulting trust for plaintiff's benefit.

On May 22, 1984, the Probate Court made three orders of attachment and trustee process on the ex parte motion of plaintiff. An attachment and trustee process in the amount of $199,371.45 was issued against Courtney Chapman in her capacity as conservator of her father's estate. An attachment and trustee process was issued against Mr. Hinckley in his capacity as co-trustee of the Revocable Trust in the

---

1. The Revocable Trust, the Estate of Gladys D. Chapman, and the Estate of Philip F. Chapman, Jr. are not proper party defendants. A claim against a trust, estate, or estate in a conservatorship may be brought against the trustee, personal representative, or conservator in his fiduciary capacity. *See* 18–A M.R.S.A. §§ 3–804 (estate), 5–429 (conservatorship), 7–306(c) (trust) (1981).

amount of $85,000. An attachment and trustee process in a like amount was issued against the Bank in its capacity as co-trustee of the Revocable Trust and as executor of the Estate of Gladys D. Chapman.

Defendants removed the case to Superior Court, and on June 20, 1984, each defendant named in plaintiff's complaint moved to dismiss, or in the alternative, to dissolve the attachments and trustee processes. Defendants alleged that the complaint fails to state a cause of action. In the alternative, defendants requested the court to dissolve the attachments and trustee processes on the ground that plaintiff had not shown a reasonable likelihood of recovering judgment, as required by M.R.Civ.P. 4A and 4B.

Before the Superior Court plaintiff conceded that his complaint does not meet the common law requirements for pleading fraud, but he asserted that the complaint meets the requirements for pleading the tort of interference. The Superior Court denied defendants motion to dismiss or dissolve the attachments and trustee processes. The Bank and Mr. Hinckley appeal from the Superior Court's order denying the motion to dissolve.

## II.

The Superior Court's order denying defendants' motion to dissolve the ex parte attachments and trustee processes is appealable under the "collateral order" exception to the final judgment rule. In *Sprague v. Washburn*, 447 A.2d 784, 786 n. 6 (Me.1982), we held that orders approving or denying an attachment, or dissolving or denying the dissolution of an attachment, or trustee process are immediately appealable. The Court reasoned that because an order sustaining a trustee process impairs the owner's rights in his property as much as the initial order approving attachment or trustee process, an order sustaining an attachment or trustee process is immediately appealable. *See id.*

## III.

An order approving an ex parte attachment or ex parte trustee process may issue only if the court finds that there is a reasonable likelihood of success on the merits. *See* M.R.Civ.P. 4A and 4B. The reasonable likelihood of success standard is a "relatively low hurdle to clear," *Precision Communications, Inc. v. Rodrigue*, 451 A.2d 300, 301 (Me.1982), connoting "mere probability of success or a favorable chance of success." *Northeast Investment Co., Inc. v. Leisure Living Communities, Inc.*, 351 A.2d 845, 852 (Me.1976). Denial of a motion to dissolve an ex parte attachment will be reversed only for clear error or abuse of discretion. *See Beesley v. Landmark Realty*, 464 A.2d 936, 937 (Me.1983).

Defendants argue that no claim has been stated against them, and, therefore, plaintiff has failed to demonstrate a reasonable likelihood of success on the merits. We agree.

Plaintiff has conceded that he failed to make allegations supporting the creation of a resulting trust or a claim of fraud. Plaintiff contends, however, that he has made out a claim for the tort of interference with a tort recovery. Plaintiff is aware that Maine has not yet recognized such a cause of action. Maine has, however, recognized the torts of interference with advantageous economic relationships and interference with an expectation under a will. *See MacKerron v. Madura*, 445 A.2d 680, 683 (Me.1982) (cause of action for interference with an existing employment or contract relationship); *Cyr v. Cote*, 396 A.2d 1013, 1018 (Me.1979) (cause of action for wrongful interference with an expected legacy or gift under a will). Plaintiff argues that interference with advantageous economic relationship and an expectation under a will are but two categories contained within the more inclusive tort of interference. Were we to *extend* our decisional law to recognize the tort of interference with a tort recovery, plaintiff would gain nothing under his present complaint.

Maine cases recognizing the tort of interference have required or had present the elements of fraud or intimidation. *See MacKerron*, 445 A.2d at 683; *Harmon v. Harmon*, 404 A.2d 1020, 1025 (Me.1979); *Cyr*, 393 A.2d at 1019. Plaintiff's complaint does not plead fraud or allege intimidation or undue influence.

■ Plaintiff, however, does not expressly ask us to extend our decisions recognizing the tort of interference. Rather, plaintiff proposes, independently of our recent Maine cases, three requirements for pleading and proving interference with a tort recovery: (1) that plaintiff could or would have recovered against the third party but for the actions of defendant; (2) that there was an intentional interference or invasion of plaintiff's interest by defendant; and (3) that damages are reasonably ascertainable. Even if we were to adopt plaintiff's formulation and recognize the tort of interference with a tort recovery, neither of which we do today, plaintiff fails to meet his own test.

Plaintiff's allegation that defendants willfully, maliciously, or intentionally prevented plaintiff from recovering his judgment satisfies the second requirement of plaintiff's proposal. Plaintiff, however, is unable to demonstrate that he could have or would have recovered against Philip but for the actions of the Bank and Mr. Hinckley. The Bank and Mr. Hinckley have been passive in this matter, and plaintiff has failed to show that they have any obligation to actively aid plaintiff in collecting his judgment against Philip. Finally, although the upper limit of plaintiff's recovery has been set by the amount of the judgment against Philip, plaintiff is unable to demonstrate the amount of damages, if any, to which he would be entitled from defendants.

On the question of damages, plaintiff's attention focuses on the property at 375 Spring Street. He would like Philip's conservator to buy that property at the option price as determined by the Probate Inventory. The record shows, however, that Philip's right to buy the Spring Street property at the Probate Inventory price expired in 1980. There is no indication of a second option to buy the Spring Street property at a price below market value. In addition, neither the Bank nor Mr. Hinckley have the authority to control the actions of the conservator, who has shown no interest in buying the property. In the alternative, plaintiff would like the Spring Street property to be transferred from the Estate of Gladys D. Chapman to the Revocable Trust where it would augment Philip's share of principal and income. As a judgment creditor of Philip, however, plaintiff has no right to enforce the terms of the will of Gladys D. Chapman or the Revocable Trust.

Plaintiff has failed to demonstrate a reasonable likelihood of success on the merits. Therefore, the entry must be.

Judgment reversed.

Remanded to the Superior Court for entry of an order dissolving attachment and trustee process issued against Casco Northern Bank, N.A. and Franklin G. Hinckley in their representative capacities.

All concurring.