HILTON SEA, INC., Plaintiff,

v.

DMR YACHTS, INC. and Dwight M. Raymond, Defendants.

Civ. No. 89-0240-P.

United States District Court, D. Maine.

Oct. 31, 1990.

Dennis C. Hagemann, Ranger, Fessenden, Copeland & Smith, Brunswick, Me., for plaintiff.

Graydon G. Stevens, Portland, Me., for defendants.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, Chief Judge.

This case is before the Court on Plaintiff's Motion for Approval of Attachment and Trustee Process against the individual Defendant Dwight Raymond. For the reasons discussed below, Plaintiff's Motion will be denied.

## I. BACKGROUND

Hilton Sea, Inc. (hereinafter Plaintiff) is a Florida corporation which contracted on February 3, 1989 with DMR Yachts, Inc., a Maine Corporation, for the construction of a 56-foot fishing party boat. Construction of the boat was never completed and all work has stopped. Plaintiff paid $191,000 of the $220,000 contract price, no part of which has been returned to this date. Each of these facts is uncontested.

Plaintiff filed a Complaint with this Court on October 2, 1989 claiming breach of contract and a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq.* The Complaint named as defendants both DMR Yachts, Inc. (hereinafter DMR Yachts) and Dwight Raymond (hereinafter Defendant), the corporation's president and sole owner.[1]

On January 2, 1990, Plaintiff sought attachment and trustee process against DMR Yachts and Defendant relying solely on the breach of contract claim. During a hearing

---

1. Several other causes of action were included in the Complaint which are not relevant to this Motion.

with the Honorable David M. Cohen, United States Magistrate, Plaintiff withdrew, without prejudice its motions against Defendant Dwight Raymond and proceeded instead against the corporate defendant, DMR Yachts. Magistrate Cohen ordered attachment of the property of DMR Yachts in the amount of $406,000 on March 9, 1990. Summary judgment on the breach of contract claim against DMR Yachts was entered by this Court on April 16, 1990. On September 12, 1990, acting on the consent of both parties, this Court endorsed Plaintiff's Motion for Partial Summary Judgment seeking possession of the uncompleted boat as partial damages for the breach of contract.

Plaintiff now moves for approval of attachment and trustee process against Defendant Dwight Raymond's personal property. The mechanism in this instance is Plaintiff's RICO claim under 18 U.S.C. section 1962(a) which asserts that Defendant illegally derived income "directly or indirectly, from a pattern of racketeering activity ... to use or invest directly or indirectly ... [in] the establishment or operation of any enterprise which is, engages in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(a).[2] Specifically, Plaintiff asserts that Defendant perpetrated mail or wire fraud in the course of his dealings with Plaintiff, in violation of 18 U.S.C. sections 1341 and 1343, and that the facts of the present case and four similar instances of alleged mail or wire fraud constitute proscribed "racketeering activity" as defined by 18 U.S.C. section 1961(1).

## II. ATTACHMENT AND TRUSTEE PROCESS

Federal Rule of Civil Procedure 64 directs that "all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held...." Maine Rule of Civil Procedure 4A, with which Local Rule 14 largely agrees, and the associated interpretive decisions of the Maine Law Court, therefore govern this case. *See Combustion Engineering, Inc. v. Miller Hydro Group*, 739 F.Supp. 666, 669 n. 5 (D.Me.1990).

█ Rule 4A permits prejudgment attachment only after a finding that

> there is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above the aggregate of any liability insurance, bond, or other security, and any property or credits attached by other writ of attachment or by trustee process shown by the defendant to be available to satisfy the judgment.

M.R.Civ.P. 4A(c). This Court accordingly must consider in the first instance whether there is a reasonable likelihood that Plaintiff will succeed in its RICO claim under section 1962(a) against this Defendant.[3]

The Law Court has made abundantly clear that the "reasonable likelihood" standard for attachments is "a relatively low hurdle to clear." *Precision Communications, Inc. v. Rodrigue*, 451 A.2d 300, 301 (Me.1982). The standard is satisfied "if an asserted claim supported by affidavit 'is not of such insubstantial character that its invalidity so clearly appears as to foreclose a reasonable possibility of recovery....' " *Barrett v. Stewart*, 456 A.2d 10, 11 (Me.

---

**2.** The Complaint does not specify the subsection of 18 U.S.C. section 1962 on which Plaintiff relies for its RICO claim, *see* Complaint (Docket No. 1); however, the Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Approval of Attachment and Trustee Process (hereinafter Plaintiff's Memorandum) limits its discussion to section 1962(a). *See* Plaintiff's Memorandum (Docket No. 7M). The Court therefore assumes that section 1962(a) is the only available basis for this Motion.

**3.** No issue is raised by either party as to whether the amount of recovery to which Plaintiff would be entitled should it obtain a judgment exceeds Defendant's insurance, bond, and security, other relevant attachments, or the value of the already awarded boat by the requested amount.

1983) (quoting *Precision Communications*, 451 A.2d at 301). The Court must determine whether the existing record establishes the existence of a more-than-insubstantial RICO claim under section 1962(a).

## III. RICO

RICO permits private civil actions for the recovery of treble damages for injuries resulting from violations of the statute. 18 U.S.C. § 1964(c). A violation of section 1962(a) consists of six elements: (1) a person (2) who is a principal (3) in a pattern of racketeering activity (4) who derives income, directly or indirectly, from that activity, (5) and uses or invests any part of that income in an enterprise (6) which constitutes, or is involved in, interstate or foreign commerce. 18 U.S.C. § 1962(a).

 Plaintiff alleges that Defendant perpetrated a money diversion scheme during the course of performance of the Hilton Sea–DMR Yachts contract. After the boat construction contract had been signed and construction had commenced, Plaintiff alleges that Defendant Dwight Raymond made an express request that Plaintiff send $60,000 to DMR Yachts so that engines for Plaintiff's boat could be purchased. Affidavit of Christopher Curran at ¶ 9 (Docket No. 7); Affidavit of Christopher Curran at ¶ 8 (Docket No. 10). The parties agree that Plaintiff wired the money directly into DMR Yachts's general business account at Ocean National Bank in Kennebunk, Maine. There is also agreement that the $60,000 was never used to purchase engines. Plaintiff alleges that the money was used for other purposes, including the personal gain of the Defendant. Affidavit of Christopher Curran at ¶ 2 (Docket No. 7). While Defendant denies that allegation, Affidavit of Dwight M. Raymond at ¶ 23 (Docket No. 13), he admits that when the time came to purchase the engines, DMR Yachts did not have sufficient funds because an anticipated payment from another customer had not arrived. *Id.* at ¶ 20.

Rather than proceeding serially through the six elements of a section 1962(a) violation, the Court need only address whether Plaintiff has satisfied its burden of establishing that there is a reasonable likelihood that Defendant engaged in racketeering activity. "Racketeering activity" is defined by the RICO statute to include, among other offenses, any act which is indictable under the federal mail or wire fraud statutes. 18 U.S.C. §§ 1341 & 1343. To be a "principal" in racketeering activity, Defendant must have either committed the mail or wire fraud himself or willfully caused "an act to be done which if directly performed by him or another would be" mail or wire fraud. 18 U.S.C. § 2.

Plaintiff argues that the above allegations, if true, constitute mail and wire fraud, and therefore racketeering activity within the scope of RICO. A person is indictable for mail fraud if she,

having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . for the purpose of executing such scheme or artifice or attempting to do so, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing. . . .

18 U.S.C. § 1341. A wire fraud violation is different only in that the perpetrator "transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice. . . ." 18 U.S.C. § 1343.

The parties agree that Plaintiff's $60,000 payment flowed directly to DMR Yachts' bank account. There is substantial disagreement, however, as to whether Defendant Dwight Raymond ever requested that Plaintiff send the payment. Defendant denies ever making an express request for

**38**

the $60,000 payment and asserts that Plaintiff forwarded the money unsolicited.[4] *See* Deposition of Dwight Raymond at 68 (January 25, 1990) (hereinafter Raymond Deposition). Defendant avers that Plaintiff's boat was not yet ready for the engines and, therefore, no request for payment would have been or was made. *See* Affidavit of Dwight M. Raymond at ¶¶ 9, 15–16 (Docket No. 13). *Accord* Raymond Deposition at 64–65.

Defendant's position is supported by Greer Cressey, bookkeeper for DMR Yachts. Affidavit of Greer Cressey at ¶¶ 4 & 5 (Docket No. 14). In addition, a letter dated May 30, 1989 from Christopher Curran, president of the Plaintiff corporation, opens with the following explanation for the payment: "On April 13, 1989 I wired $60,000 to you for the payment of engines on my boat. I did that *because Greer [Cressey] told me* that you intended to install the engines within the next two days." Affidavit of Dwight Raymond, Exhibit F—Curran Letter (Docket No. 13) (emphasis added).[5]

Even given the low standard for attachment proceedings observed in Maine, the Court finds that Plaintiff has not satisfied its burden of establishing a reasonable likelihood that Defendant has violated the federal mail and wire fraud statutes. Plaintiff has failed to satisfy its burden in two ways. First, Plaintiff has not established a reasonable likelihood that Defendant made *any* request specifically relating to a payment for the engines. The only evidentiary quality submission supporting the allegation that Defendant made any representation to Plaintiff is the affidavit of Plaintiff's president, Christopher Curran. Directly contradicting Curran's nonspecific averment are the affidavits of Defendant Raymond and Greer Cressey, deposition testimony by Defendant, and a copy of a letter apparently signed by Curran. Plaintiff makes no response in the record or in

its papers to this substantial rebuttal evidence. An unsupported allegation cannot establish a reasonable probability of success when it is directly and thoroughly contradicted by rebuttal evidence of this quality.

Second, even if the record supported the allegation that Defendant made an express request for $60,000, the evidence contained in the Curran Affidavit is not sufficient to show that the request defrauded Plaintiff through misrepresentation. Plaintiff must establish a reasonable probability that Defendant Raymond engaged in a scheme conceived for the purpose of defrauding by means of false pretenses, representations or promises. *United States v. Brien*, 617 F.2d 299, 307 (1st Cir.), *cert. denied*, 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273 (1980). Even though the scope of fraud under the mail and wire fraud statutes is broader than that of common-law fraud, there can be no violation of these statutes in the absence of an intent to deceive "by means of false or fraudulent pretenses, representations, promises or other deceptive conduct." *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 791 (1st Cir.1990).

On this record, there is absolutely no affirmative proof that Defendant Raymond made a false or fraudulent statement, promise or representation relating to the $60,000 payment. The complete text of Curran's averment, which is Plaintiff's only evidence on this point, is as follows:

On or about April 13, 1989, pursuant to the express request of DMR Yachts and Dwight M. Raymond ("Raymond"), Hilton Sea delivered, by wire transfer, Sixty Thousand Dollars ($60,000) to defendant DMR Yachts. Defendants represented to Hilton Sea that the funds were for the [sic] immediate payment to the engine manufacturer. In contravention of their express representations, said monies did

---

**4.** There is some evidence on the record that Plaintiff was in direct contact with Power Products, the engines' manufacturer. Defendant alleges that Power Products was providing false information to Plaintiff regarding the readiness of the engines in an effort to expedite payment.

Deposition of Dwight Raymond at 34–35, 51 (January 25, 1990).

**5.** This same letter was marked Deposition Exhibit # 4 and added to the record of the Raymond Deposition.

not go for the use and benefit of Hilton Sea. The Sixty Thousand wired to the defendants has never been used to purchase materials for incorporation into the boat which is the subject matter of the Contract nor to pay for labor charges for work performed on such boat nor for any other purpose associated with the Contract. Defendants have refused and continue to refuse to return any monies to Hilton Sea despite Hilton Sea's demand for the same. Further, notwithstanding Hilton Sea's demand, defendants have failed and refused to deliver the boat to Hilton Sea.

Affidavit of Christopher Curran at ¶ 8 (Docket No. 10).[6] Accepting Curran's averment as true, Defendant Raymond allegedly asked for and received $60,000 while representing that he would buy engines which he never bought. These alleged facts do not make out a case for mail or wire fraud.

■ A wide range of equally likely explanations could be offered for Defendant's failure to purchase the engines. Plaintiff has not offered any evidence which compels the Court to conclude that Defendant committed fraud. A failure to perform as promised does not, without more, constitute fraud. If the opposite were true, every breach of contract would present a colorable claim for fraud and, perhaps, a RICO violation. But breaches of contracts, and even some illegal schemes perpetrated using the mails and wires are not violations of the federal wire and mail fraud statutes. *McEvoy Travel Bureau*, 904 F.2d at 791.

Further, the Court cannot determine from Curran's description what terms were and were not included in Defendant Raymond's alleged representation. Defendant Raymond may or may not have qualified his promise to buy the engines, offered a specific time frame for the purchase, explained difficulties in his dealings with the engines' manufacturers, or outright defrauded the Plaintiff. Plaintiff has simply failed to establish in even the most limited

way what occurred in the alleged conversation between Curran and Raymond. In sum, Plaintiff has failed to provide any evidence which compels the Court to find, assuming that Defendant Raymond made any representation at all, that there is a reasonable probability that the representation was fraudulent.

Accordingly, Plaintiff's Motion for Approval of Attachment and Trustee Process is DENIED.

So ORDERED.

---

**6.** An earlier affidavit gives a virtually identical rendition of the events surrounding the alleged express request. The differences in Curran's averments are not material to this issue. *See* Affidavit of Christopher Curran at ¶ 9 (Docket No. 7).