Thomas DEVINE

v.

ROCHE BIOMEDICAL
LABORATORIES,
INC., et al.

Decision No. 6754.

Supreme Judicial Court of Maine.

Argued April 29, 1993.
Decided Jan. 14, 1994.
As Amended March 14, 1994.

Terrence D. Garmey (orally), Roberts H. Furbish (orally), Smith & Elliott, Portland, for plaintiff.

Arlyn H. Weeks (orally), Constance P. O'Neil, Conley, Haley & O'Neil, Bath, Gerald Petruccelli (orally), James B. Haddow, Petruccelli & Martin, Portland, Malcolm L. Lyons (orally), Benjamin P. Townsend, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Augusta, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

RUDMAN, Justice.

Plaintiff Thomas Devine and Defendant Bath Iron Works Corporation (BIW) appeal from summary judgments entered in the Superior Court (Cumberland County, *Fritzsche, J.*) in favor of Defendants Roche Biomedical Laboratories, Inc. and Northern Diagnostic Laboratories, Inc. (NorDx) (collectively "the labs"). Based upon the record before us, there are no material issues of fact as to Devine's tort claims against the labs. We therefore affirm the judgment of the Superior Court in that regard. Devine's claim for breach of contract was not considered by the Superior Court and BIW's claims in tort and for breach of contract raise genuine issues of material fact. We therefore vacate those judgments.

In September 1988, Thomas Devine, a 53–year–old ship designer who had been a contract employee for approximately one year, applied for a permanent position at BIW. Although BIW immediately offered him a position, Devine was required, pursuant to BIW's then written policy, to pass a drug test prior to beginning his employment. The urinalysis conducted by BIW for screening purposes revealed the presence of opiates. A second urinalysis conducted two days later also tested positive for opiates. Because these results seemed implausible, BIW, in a deviation from its policy, allowed Devine to begin work on the condition that he would resign if a confirmation test of the second sample was positive for opiates.

BIW forwarded the sample to NorDx with which it had contracted for confirmation testing. NorDx in turn forwarded the sample to its subcontractor, Roche, to perform the actual testing. BIW was aware that NorDx was subcontracting this work to Roche. Roche's testing confirmed the presence of opiates in a concentration of 2,174 nanograms per milliliter (ng/ml). In accordance with his commitment, Devine resigned on receipt of the positive test result. Shortly thereafter, Devine contacted Wayne McFarland, BIW's Manager of Medical Administration and Clinical Services, to suggest that his positive test result could have been caused by the poppy seed muffin he ate each morning. McFarland then telephoned Roche and asked to speak to the laboratory director. In response to McFarland's questions, a woman identifying herself as a doctor stated that while the ingestion of poppy seeds could lead to a positive test result for opiates, the level shown by Devine's test was too high to be the result of poppy seed ingestion.[1] In light of this information, later confirmed to BIW by an independent drug treatment expert, BIW decided not to change its employment decision.

Devine commenced this action against Roche, NorDx, and BIW seeking recovery in both tort and contract. Devine and BIW

---

1. This information is in direct conflict with information that had been published in Roche's own Technical Review in April 1988 indicating that an opiate level of up to 5,000 ng/ml is possible following poppy seed ingestion.

subsequently settled. Thereafter, the labs were granted leave to amend their answers to assert cross-claims against BIW. BIW then asserted a cross-claim for breach of contract, negligence and indemnification against the labs. The labs filed motions for summary judgments in which they argued that they owed Devine no duty in either contract or tort, and that BIW was not entitled to damages for breach of contract, negligence or indemnification for its losses. The court granted summary judgments in favor· of the labs and these appeals followed.

■ In reviewing the entry of a summary judgment, we examine the evidence in the light most favorable to the party against whom the judgment was entered to determine whether the trial court committed an error of law. *See Guiggey v. Bombardier,* 615 A.2d 1169, 1171 (Me.1992). "We will affirm a summary judgment if the record discloses that there is no genuine issue of material fact and that ... [the] party is entitled to a judgment as a matter of law." *Bahre v. Pearl,* 595 A.2d 1027, 1032 (Me. 1991).

### I.  BIW'S CLAIMS AGAINST NORDX AND ROCHE

#### A.  Breach of Contract

It is undisputed that BIW contracted with NorDx to provide confirmation drug testing, and that Roche participated in the negotiations leading to the contract and subcontracted to perform the actual laboratory work. The extent of NorDx's obligations under the prime contract, however, is disputed. The contract provided:

### ARTICLE I—STATEMENT OF WORK

[The Contractor] ... shall render all the services specified in Attachment A, ... shall furnish all necessary materials, supplies and equipment, shall complete the work within the time periods specified herein and shall perform any other services required to complete the work in accordance with the terms and conditions of this Contract. All work performed by [the Contractor] shall be completed in accordance with the applicable professional standards and to the complete satisfaction of BIW.

. . . .

### ARTICLE XXI—PERFORMANCE

The parties acknowledge that [the Contractor has] and BIW is relying on [the Contractor's] special skills, knowledge and ability regarding the type of work to be performed under this Contract and accordingly, [the Contractor] will use [its] special skills, knowledge, ability, best efforts, ingenuity and due diligence in performing the services set forth in Attachment A ... of this Contract. [The Contractor] shall be responsible for the professional quality, technical accuracy and completeness of all work and services furnished under this Contract.

. . . .

### ATTACHMENT A

I.  [The Contractor] shall provide clinical laboratory services to the BIW Medical Department in accordance with the terms and conditions of the contract and the specific requirements set forth in this Attachment A.

. . . .

III.  ... Test results provided by [the Contractor] to BIW shall include but not be limited to the following: appropriate normal range; test methodology and respective assay sensitivity.

In their respective motions for a summary judgment, NorDx and Roche argued that the prime contract was unambiguous and that NorDx was not contractually obligated to provide scientific information about poppy seed ingestion. They contended that the only contractual obligations to BIW were to provide confirmation testing on urine samples submitted by BIW, to notify BIW of any test disclosing an opiate level in excess of 300 ng/ml and to provide courier service. BIW contended that the laboratories were contractually obligated to help BIW correctly analyze test results and to provide BIW with information known to both Roche and NorDx

relating to the effects of dietary intake on test results.

■ "A threshold question in contract interpretation is whether the contract is ambiguous in any material respect." Horton & McGehee, *Maine Civil Remedies* § 10.10 at 10–7 (1992). The issue of whether a contract is ambiguous is one of law that we review *de novo. Hopewell v. Langdon,* 537 A.2d 602, 604 (Me.1988). *See also Bliss v. Bliss,* 583 A.2d 208, 210 (Me.1990) (interpreting divorce judgment). Contract language is ambiguous when it is reasonably susceptible of different interpretations. *American Policyholders Ins. Co. v. Kyes,* 483 A.2d 337, 340 (Me.1984). The proper interpretation of the ambiguous language is to be determined by the trier of fact on the basis of evidence presented to it at the time of trial. *Titcomb v. Saco Mobile Home Sales, Inc.,* 544 A.2d 754, 757 (Me. 1988).

■ Here, NorDx contracted to provide "clinical laboratory services." The test results were to "include *but not be limited to* the following: *appropriate normal range; test methodology and respective assay sensitivity.*" The contract further recited the acknowledgement of the parties that BIW was "relying on [the Contractor's] special skills, knowledge and ability regarding the work to be performed" and the Contractor would use its "special skills, knowledge, ability, best efforts, ingenuity and due diligence" in fulfilling its responsibility for the "professional quality, technical accuracy and *completeness* of all work and services furnished under [the] Contract." Finally, the contract obligated the Contractor to "furnish [BIW] all necessary materials, supplies and equipment" and "perform any other services required to complete the work ... in accordance with the applicable professional standards and to the complete satisfaction of BIW."

It is apparent that the undertakings of the Contractor are reasonably susceptible of different interpretations. Whether they required, *inter alia,* that the laboratories furnish to BIW information known to the laboratories relating to the effects of dietary intake on test results is a question of fact. The proper interpretation of the ambiguous language must be left to the resolution of the fact finder on the basis of evidence adduced on these issues at the time of a trial of this case. There is a question of fact as to whether Roche is liable to BIW on a theory of implied contract. Roche, although not a party, was informed as to the prime contract. It is claimed that Roche undertook to respond directly to BIW's inquiry. Accordingly, the trial court was precluded from granting a summary judgment on this record in favor of both NorDx and Roche on BIW's claim for a breach of contract.

### B. Negligent Misrepresentation

■ The record also supports BIW's claim for negligent misrepresentation. In *Chapman v. Rideout,* 568 A.2d 829, 830 (Me.1990), we adopted the definition of negligent misrepresentation set forth in section 552(1) of the Restatement (Second) of Torts. This section provides:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1) (1977).

The uncontradicted evidence before the trial court was that a person identifying herself as a doctor responded to a telephone call from a member of BIW's medical staff to Roche inquiring whether the ingestion of poppy seeds could cause a positive result for opiates. The doctor responded that this was possible. She was then asked whether poppy seed ingestion could result in an opiate level as high as that detected in Devine's urine. She responded that it could not. This information was in direct conflict with Roche's own Technical Review, published several months earlier, which stated that poppy seed ingestion could cause an opiate level over twice that exhibited by Devine.

Whether BIW relied on the misrepresentation by Roche is a question of fact. *See generally Wildes v. Ocean Nat. Bank of Kennebunk,* 498 A.2d 601, 602 (Me.1985) (justifiable reliance on false representation is essential *fact* element of fraud claim); Restatement (Second) of Torts § 547 cmt. a (1977) (whether a person relies on a fraudulent misrepresentation as opposed to his own investigation is a question of fact). The record contains evidence that BIW was relying on the representation of the Roche employee. The deposition testimony of Stephan Wilson, Vice President of Human Resources at BIW, reflects that:

> There was a point in time ... that the information that we had received from the laboratory was that the levels of opiates detected were extremely high and that a single poppy seed roll or two poppy seed rolls would not result in nanogram levels as high as [Devine's] tests were.

> And so from my personal standpoint, the lab work and the work that had been done had been something that we had placed high reliance on and it was confirmation of a screen test done with the state of the art technology and we believed in it and so we accepted that report and so for me, it became an issue of basically reliance on that information.

Wilson also testified that he would have reversed the decision to ask for Devine's resignation if he was convinced that the opiate level could have been caused by poppy seeds. The existence of this material factual issue precludes the entry of a summary judgment against BIW. On a motion for a summary judgment, the sole function of the trial court is "to determine whether there is a disputed factual issue, not to decide such an issue if found to exist." *Levesque v. Chan,* 569 A.2d 600, 601 (Me.1990) (determination of whether a witness is qualified to testify as an expert).

### C. Indemnification

#### 1. Contractual Indemnification

Article 6 of the contract is the basis for BIW's claim to indemnification. That section, however, requires NorDx to indemnify BIW only for BIW's liability "for personal injury or damage to real or tangible personal property ... arising out of or attributable to [an] act or omission of [NorDx] in performing its obligations under this contract...." Like any other terms of a contract, indemnity provisions should be interpreted according to their plain, unambiguous language. *Fowler v. Boise Cascade Corp.,* 948 F.2d 49, 55 (1st Cir.1991). The term "personal injury" does not encompass the harm for which BIW seeks recovery in this action. *See, e.g., Arkansas Power & Light Co. v. Home Insurance Co.,* 602 F.Supp. 740, 746 (D.Ark.1985) (claim for breach of oral contract to employ and pay salary was not a personal injury); *Bituminous, Inc. v. Uerling,* 270 Ark. 904, 607 S.W.2d 331, 333 (1980) (finding that financial loss suffered by a corporation was not a personal injury); *Oyler v. State,* 618 P.2d 1042, 1045 (Wyo.1980) (alleged injury resulting from an offer of employment which never ripened did not fall within the definition of personal injury nor property damage). Similarly, the term "property damage" does not include the harm allegedly suffered by BIW in this case. *L. Ray Packing Co. v. Commercial Union Ins.,* 469 A.2d 832, 835 (Me.1983) ("while loss of use of tangible property does include tangible property which has been diminished in value or made useless irrespective of any physical injury to the property ... it does not include mere economic damage in the nature of loss of investments, anticipated profits, and financial interest.").

BIW had no contract with Roche, thus any contractual claim for indemnification against Roche must fail. An indemnification claim based on contract must rest on a clear, express, specific, and explicit contractual provision, under which the party against which a claim is to be asserted has agreed to assume the duty to indemnify. *Cf. Fowler v. Boise Cascade Corp.,* 948 F.2d 49, 55–56 (1st Cir.1991). (No indemnification by employer to third parties, as to matters where the employer would have workers' compensation immunity, absent unambiguous indemnification agreement). A party cannot be subject to a contractual indemnification obligation that it has not unambiguously assumed.

### 2. Common law indemnification

█ Whether BIW is entitled to indemnification from NorDx and Roche as a matter of common law, however, generates genuine issues of material fact that either or both labs induced BIW's tortious conduct towards Devine. The same issues of fact that support BIW's contract and tort claims against NorDx and Roche support its common law indemnification claim. We express no opinion as to whether BIW can establish any compensable damages as to any of its claims.

## II. DEVINE'S CLAIMS AGAINST NORDX AND ROCHE

### A. Tort Claims

Devine alleges that the labs are liable to him under at least one intentional tort theory, and a host of negligence-based causes of action. Viewing the facts in a light most favorable to Devine, there is no issue of material fact to support any of these claims.

#### 1. Tortious Interference with a Business Relationship

█ Devine seeks damages from NorDx and Roche on his claim that they interfered with what he considered to be either an actual or an anticipated advantageous business relationship with BIW. To establish a claim based on interference with an advantageous business relationship, one must establish the elements of fraud or intimidation. See St. Hilaire v. Edwards, 581 A.2d 806, 807 (Me.1991); DiPietro v. Casco Northern Bank, 490 A.2d 215, 219 (Me.1985). Devine has neither alleged nor provided any evidence to support an allegation that either NorDx or Roche acted with malice, fraud, intimidation or undue influence at any time, however, and he has thus failed to establish, prima facie, an essential element of his claim.

### 2. Negligence Theories

█ Devine sets forth a number of claims grounded in negligence against both labs, individually and jointly. First, he sets forth the claim of negligent infliction of emotional distress. See Gammon v. Osteopathic Hospital of Maine, 534 A.2d 1282 (Me.1987). In deciding Gammon, however, we noted that we were not creating a new claim on which relief could be granted. Id. at 1285 ("we do not foresee any great extension of tort liability by our ruling of today"). Gammon simply removed barriers that prevented plaintiffs from proceeding with claims already recognized in Maine law when the only damage they suffered was to their psyches. It represented a recognition that emotional distress alone may constitute compensable damage, but was not meant to create a new ground for liability, nor was it meant to give plaintiffs a license to circumvent other requirements of the law of torts. A plaintiff who fails to prove that the defendant violated a duty of care owed to the plaintiff cannot recover, whether the damage is emotional, physical, or economic. See Cameron v. Pepin, 610 A.2d 279, 281 (Me.1982) (explaining that Gammon does not eliminate legal theory limitations on the scope of a defendant's duty of care).

█ Second, Devine attempts to recover from NorDx under a negligence theory that relies on Restatement (Second) of Torts § 324A.[2] Devine argues that section 324A entitles him to recover damages from NorDx because NorDx did not give BIW the Roche Technical Review. Section 324A offers no support to Devine's claim for he sustained no physical harm. The fact that we have recognized the right to recover in tort for emotional distress unaccompanied by physical harm, see Gammon, 534 A.2d at 1283, does not automatically eliminate the physical harm re-

---

**2.** Restatement (Second) of Torts § 324A (1965) provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or
(b) he has undertaken to perform a duty owed by the other to the third person, or
(c) the harm is suffered because of reliance of the other or the third person upon the undertaking. Emphasis added.

quirement of section 324A. Assuming we were persuaded that "physical harm" should be read to include psychic harm in this context, Devine has offered no evidence that he suffered psychic injury. The only injury his submissions can arguably be read to suggest is economic injury, damage that is clearly not compensable under section 324A. *Sound of Market Street v. Continental Bank Int'l*, 819 F.2d 384, 392 (3d Cir.1987); *Palco Linings v. Pavex, Inc.*, 755 F.Supp. 1278, 1280 (M.D.Pa. 1990); *Benco Plastics, Inc. v. Westinghouse Elec. Corp.*, 387 F.Supp. 772, 786 (E.D.Tenn. 1974).

■ Against Roche, Devine specifically claims this lab was negligent in the manner in which it conducted the drug testing. The record, however, provides absolutely no support for any allegation that the testing analysis performed by Roche incorrectly disclosed opiates in Devine's urine. To the contrary, the independent experiment that Devine conducted, in which he obtained a negative test result before eating a poppy seed muffin and a positive one afterwards, confirms the positive test results for opiates. Although Roche's followup testing confirmed the presence of opiates, nothing about Roche's test results "falsely indicated plaintiff used drugs," as Devine had alleged.

■ Devine also claims negligence on the part of Roche by virtue of statements alleged to have been made by a female Roche employee that the level shown by Devine's test was too high to be the result of poppy seed ingestion. Devine specifically alleges that Roche failed to provide the correct information regarding the possible problem with poppy seeds when its "doctor" was reached by telephone. Any misrepresentation by Roche was made to BIW and not to Devine and was not communicated to Devine. Devine cannot lay claim to third-party damages as a result of misrepresentations to BIW.

In sum, Devine has failed to generate any issue of material fact to support a claim against NorDx or Roche based on any tort theory. The party having the burden of proof at trial must produce, in opposition to a motion for a summary judgment, evidence that would be sufficient to resist a motion for a judgment as a matter of law if that party

produced nothing more at trial than was before the court at the time of the motion. *Estate of Althenn v. Althenn*, 609 A.2d 711, 714 (Me.1992). Viewing the evidence in the light most favorable to Devine, the Superior Court did not err in concluding as a matter of law that there was no issue of material fact on which relief could be based.

### B. Contract Claims

Whether Devine qualifies as a third party beneficiary presents an issue not decided by the trial court. *See F.O. Bailey Co. v. Ledgewood, Inc.*, 603 A.2d 466, 468 (Me.1992); *Martin v. Scott Paper Co.*, 511 A.2d 1048, 1049–1050 (Me.1986); *Restatement (Second) of Contracts*, § 302; 4 Arthur L. Corbin, *Corbin on Contracts*, § 776 (1951). We therefore vacate the judgment entered against Devine on his claim based on contract in order that the Superior Court may consider the labs's motion for summary judgment on that issue.

The entry is:

Judgments against Devine on his tort claims affirmed. Judgments against Devine on his contract claim vacated. Judgments against Bath Iron Works Corporation on its claim for contractual indemnification affirmed. Judgments vacated as to the remaining claims of Bath Iron Works Corporation. Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.