**Gerald C. GAMMON**

v.

**OSTEOPATHIC HOSPITAL OF MAINE, INC., et al.**

Supreme Judicial Court of Maine.

Argued March 5, 1987.
Decided Dec. 16, 1987.

Terrance D. Garmey (orally), Maureen E. Dea, William Kany, Smith & Elliott, Saco, for plaintiff.

Leland N. Chisholm (orally), R. Terrance Duddy, Kelly, Remmel & Zimmerman, Portland, for Neal–York Funeral Home, Inc.

James M. Bowie (orally), Hunt, Thompson & Bowie, Portland, for Osteopathic Hosp. of Maine, Inc.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, SCOLNIK and CLIFFORD, JJ.

ROBERTS, Justice.

Following a jury trial, the Superior Court, Cumberland County, entered a judgment against the plaintiff, Gerald C. Gammon, and in favor of the defendants, Osteopathic Hospital of Maine, Inc. and Neal–York Funeral Home, Inc. On appeal Gammon challenges the directed verdict granted on Count I of his complaint, which alleged negligent infliction of severe emotional distress.[1] Because the evidence introduced at trial would support a verdict in Gammon's favor on the negligence theory of Count I, we vacate the judgment.

---

1. Gammon's brief states that the court also erred in directing a verdict for the defendants on Count II, but he presents no argument in support of that contention. Gammon does not challenge the jury verdict against him on Count

## I.

Linwood Gammon, Gerald's father, died on November 7, 1982 at the Osteopathic Hospital in Portland. Gerald Gammon asked the Neal–York Funeral Home to make the funeral arrangements. Morrill York went to the hospital to pick up Linwood Gammon's body. Hospital personnel directed him to the hospital morgue where corpses are kept in a two-drawer cooler. York found the bottom drawer empty. The top drawer contained Linwood Gammon's body identified by a tag. That drawer also contained two plastic bags, one of which was identified by a tag as Gammon's personal effects. Because on prior occasions York had found personal effects in the cooler with corpses, he assumed that both bags contained Gammon's personal effects.

Both plastic bags were delivered to Gerald Gammon at the funeral home and taken by him to his father's home in Limington. The next morning Gammon searched the tagged bag looking for his father's shaver. He found only clothing. Inside the untagged bag, he found a second bag. When he opened the second bag, Gammon discovered a bloodied leg, severed below the knee and bluish in color. He yelled "Oh my God, they have taken my father's leg off." He ran into the kitchen where he leaned against the refrigerator for support, and said, "Guess what I found in the bathroom. I found my father's leg." In the words of Gammon's aunt, "He was as white as a ghost."

Gammon later found a label located on the outside of the inner bag that identified the leg as a pathology specimen that had been removed from someone other than his father. He carried the bag to the garage and called York who returned the bag to the hospital. Thereafter, Gammon began having nightmares for the first time in his life, his personality was affected and his relationship with his wife and children deteriorated. After several months Gammon's emotional state began to improve, although his wife testified that he still had occasional nightmares and Gammon testified that he still sees the leg in his mind two or three times a week. He did not seek medical or psychiatric evaluation or treatment and no medical evidence was offered at trial.

The trial court granted the defendants' motions for a directed verdict on Gammon's claim for negligent infliction of severe emotional distress. Gammon's claim in Count III of his complaint for damages resulting from intentional or reckless infliction of severe emotional distress was submitted to the jury upon special interrogatories. The jury concluded that Gammon had suffered "severe emotional distress"[2] but that the distress was not proximately caused by intentional or reckless conduct of either defendant. Accordingly, the court entered judgment in favor of the defendants.

## II.

■ The issue is whether, in these circumstances, Gammon has established a claim, in tort, for negligent infliction of severe emotional distress. A person's psychic well-being is as much entitled to legal protection as is his physical well-being. We recognize as much and provide compensation when the emotional distress is intentionally or recklessly inflicted, when the emotional distress results from physical injury negligently inflicted, or when negligently inflicted emotional distress results in physical injury. In order to ensure that a claim for emotional distress without physical injury is not spurious, we have previously required a showing of physical impact, objective manifestation, underlying or accompanying tort, or special circumstances. In the case before us, we conclude that these more or less arbitrary requirements should not bar Gammon's claim for compensation for severe emotional distress.

III that alleged intentional or reckless infliction of emotional distress.

2. The court defined severe emotional distress as "such that no reasonable man could be expected to endure it."

In 1880 we held that "mental suffering alone, unattended by any injury to the person, caused by simple actionable negligence" was not compensable. *Wyman v. Leavitt,* 71 Me. 227 (1880). Again, in 1921 we held that "if no bodily injury is alleged or proved ... mental suffering ... [is] outside the principle of compensation." *Herrick v. Evening Express Pub. Co.,* 120 Me. 138, 113 A. 16 (1921). Seventeen years ago we adopted a new rule allowing recovery where the plaintiff suffered substantial and objectively manifested mental and emotional suffering proximately caused by an act of negligence "even though there [was] no discernable trauma from external causes." *Wallace v. Coca–Cola Bottling Plants, Inc.,* 269 A.2d 117 (Me.1970). We later found in *Wallace a fortiori* support for the adoption of the rule of liability stated in section 46 of the *Restatement (Second) of Torts* (1965) for intentionally or recklessly causing severe emotional distress. *Vicnire v. Ford Motor Credit Co.,* 401 A.2d 148, 154 (Me.1979). To the extent that the language of the *Wallace* opinion rejected the "physical impact" requirement in addition to its rejection of the "bodily injury" requirement as an essential element, it was unnecessary to the holding.[3] Nevertheless, we adopted the *Wallace* dictum as support for our holding in favor of allowing a bystander to recover for emotional distress without showing physical impact. *Culbert v. Sampson's Supermarkets, Inc.,* 444 A.2d 433 (Me.1982). Moreover, that part of the *Wallace* decision requiring proof of "objective symptomatology" (nausea, for example) was explicitly overruled.[4] *Id.* at 437. We concluded that the requirement of physical manifestation of mental distress was both over-inclusive (permitting recovery for trivial distress if accompanied by physical symptoms), and underinclusive (denying recovery for serious distress if not accompanied by physical symptoms). *Id.* For bystander recovery for damages resulting from "serious mental distress," we were satisfied that "the state of modern medical science" plus the factors deemed relevant in determining foreseeability provided sufficient guarantee against fraudulent claims and against undue burden on defendants. *Id.* at 436–37.

Two years later, in the context of a defamation action, we reaffirmed the *Culbert* foreseeability test but concluded that the jury verdict for the defendant on the defamation action precluded recovery by the plaintiff for negligently inflicted emotional distress. *Packard v. Cent. Me. Power Co.,* 477 A.2d 264 (Me.1984). Last year, in a case involving late delivery of a memorial stone, we affirmed the denial of recovery for emotional distress in the absence of either physical consequences or an "independent underlying tort." *Rubin v. Matthews Int'l. Corp.,* 503 A.2d 694 (Me.1986) (citing *Packard*). Most recently, in an action for mental distress caused by negligent treatment by a psychotherapist, we vacated a summary judgment in favor of the defendants. *Rowe v. Bennett,* 514 A.2d 802, 804 (Me.1986). Three members of the *Rowe* court found it necessary to create an exception to the *Rubin* requirement of an "underlying tort." That exception was justified, the opinion states, because it is unlikely that "objective evidence of mental distress will be unavailable in a claim by a patient against his psychotherapist." *Id.* at 806.

No useful purpose would be served by more detailed analyses of our prior decisions or by consideration of whether the holdings of these cases follow a consistent trend. They demonstrate in a variety of ways the difficulty courts have had dealing

---

**3.** There was evidence of impact in *Wallace* although the impact clearly was insufficient of itself to cause physical, as opposed to psychic, injury.

**4.** Our implicit rejection of section 313 of the *Restatement (Second) of Torts* (1965) that requires proof of "illness or bodily harm" as a result of negligently inflicted mental distress reflected the developing caselaw rejecting this requirement in the 17 years since the Restatement's adoption.

with psychic injury.[5] They also demonstrate the frailty of supposed lines of demarcation when they are subjected to judicial scrutiny in the context of varying fact patterns. Moreover, these cases disclose our awareness of the extensive criticism aimed at the artificial devices used by courts to protect against fraudulent claims and against undue burden on the conduct of defendants.

The analyses of commentators[6] and the developing trend in caselaw[7] encourage us to abandon these artificial devices in this and future tort actions and to rely upon the trial process for protection against fraudulent claims. In addition, the traditional tort principle of foreseeability relied upon in *Wallace* and *Culbert* provides adequate protection against unduly burdensome liability claims for emotional distress. Jurors or trial judges will be able to evaluate the impact of psychic trauma with no greater difficulty than pertains to assessment of damages for any intangible injury. We do not foresee any great extension of tort liability by our ruling today. We do not provide compensation for the hurt feelings of the supersensitive plaintiff —the eggshell psyche. A defendant is bound to foresee psychic harm only when such harm reasonably could be expected to befall the ordinarily sensitive person.[8]

We have previously recognized that courts in other jurisdictions have allowed recovery for mental distress alone for negligent mishandling of corpses. *Rubin,* 503 A.2d at 699 n. 5. In recognizing that Gammon has made out a claim in the instant case, we do not find it necessary to rely on an extension of this exception. Instead, we look to the rationale supporting the exception. Courts have concluded that the exceptional vulnerability of the family of recent decedents makes it highly probable that emotional distress will result from mishandling the body. *See, e.g., Whitehair v. Highland Memory Gardens, Inc.,* 327 S.E.2d 438 (W.Va.1985). That high probability is said to provide sufficient trustworthiness to allay the court's fear of fraudulent claims. *Prosser and Keaton on Law of Torts,* § 362 (5th Ed.1984). This rationale, it seems, is but another way of determining that the defendant reasonably *should have* foreseen that mental distress would result from his negligence. By the same token, on the record before us, a jury could conclude that the hospital and the mortician reasonably should have foreseen that members of Linwood Gammon's family would be vulnerable to emotional shock at finding a severed leg in what was supposed to be the decedent's personal effects. Despite the defendants' argument to the

5. When discussing this type of injury, the courts of other jurisdictions and the commentators have used as the adjective either "emotional, mental, nervous or psychic" together with the noun "distress, pain, injury, harm, trauma, disturbance or shock." These phrases have not become words of art although each, with varying degrees of accuracy, seems to refer to nontactile trauma resulting in injury to the psyche.

6. *See, e.g., Prosser and Keeton on Law of Torts,* 54 (5th ed. 1984); Bell, *The Bell Tolls: Toward Full Tort Recovery for Psychic Injury,* 36 U.Fla.L. Rev. 333 (1984); Nolan & Ursin, *Negligent Infliction of Emotional Distress: Coherence Emerging from Chaos,* 33 Hast. L.J. 583 (1982); Zepkin, *The Independent Tort of Negligently Inflicted Emotional Distress—Its Time Has Come,* 10 Va.Bar J. 4 (1984).

7. *See, e.g., Molien v. Kaiser Foundation Hosp.,* 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813 (Cal. 1980) (in bank) (negligent diagnosis of syphilis in plaintiff's wife); *Rodrigues v. State,* 472 P.2d

509 (Haw.1970) (negligently caused property damage inflicting mental distress); *Leong v. Takasaki,* 520 P.2d 758 (Haw.1974) (bystander recovery for negligently inflicted mental distress without resulting physical injury); *Bass v. Nooney Co.,* 646 S.W.2d 765 (Mo.1983) (en banc) (emotional distress from being trapped in an elevator); *St. Elizabeth Hosp. v. Garrard,* 730 S.W.2d 649 (Tex.1987) (negligent disposal of stillborn infant's body); *Gates v. Richardson,* 719 P.2d 193 (Wyo.1986) (bystander recovery for negligent infliction of emotional distress); *Contra Payton v. Abbott Labs,* 386 Mass. 540, 437 N.E.2d 171 (1982) (mental distress caused by exposure to DES *in utero*).

8. We described serious mental distress in *Culbert* as being "where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the event." *Rowe,* 514 A.2d at 805 (quoting *Culbert* ).

contrary, we hold that the evidence in this case would support a jury finding that either or both defendants failed to exercise reasonable care to prevent such an occurrence.

Although the analysis in the instant case may impact upon the rationale of our recent cases, we do not find it necessary to overrule those cases. We do not hold that any prior case was wrongly decided. Rather, we recognize that the elimination of some barriers to recovery for negligent infliction of severe emotional distress may compel further evaluation of other policy considerations. For example, the result in *Packard* is supported on the ground stated by the trial court: "[B]y allowing recovery ... merely on the ground of negligence, the 'qualified privilege' given to communications to law enforcement officials is diluted." *Packard*, 477 A.2d at 268.

■ On the facts and circumstances of the case before us, however, we find no sound basis to preclude potential compensation to Gammon. We hold, therefore, that the trial court erred in directing a verdict on Gammon's claim for negligent infliction of severe emotional distress.[9] Accordingly, we vacate the judgment in favor of the defendants on Count I.

The entry is: Judgment on Count I vacated.

Remanded for further proceedings consistent with the opinion herein.

All concurring.

---

9. By virtue of the pleadings and the jury finding in the case before us, our holding necessarily is limited to negligently inflicted *severe* emotional distress. We do not decide whether a defendant shall be liable for negligently inflicted emotional distress of any lesser degree.