STATE OF MAINE                                      SUPERIOR COURT
CUMBERLAND, ss                                      CIVIL ACTION
                                                    DOCKET NO. CV-10-309
                                                    *N M - Cum*    1/26/2011

LEON KENNEY,
et al.,

        Plaintiffs
                                                    ORDER ON DEFENDANT'S
        v.                          MOTION FOR JUDGMENT
                                                    ON THE PLEADINGS
HILLHOUSE, INC.,

        Defendant


The defendant moves for judgment on the pleadings on counts III (fraudulent concealment) and IV (negligent infliction of emotional distress) of the plaintiffs' complaint pursuant to M.R. Civ. P. 12(b)(6) and 12(c). For the following reasons, the defendant's motion is denied.

BACKGROUND

Plaintiffs, Leon Kenney and Robert Kenney (Kenneys), are the children of Virginia Kenney and the co-personal representatives of her estate. (Compl. ¶ 3.) Leon Kenney, Virginia Kenney's medical power of attorney, was a signatory on the contract with the defendant and acted as her representative while she was a resident at HillHouse. (Compl. ¶ 1.) Virginia was a resident at Hillhouse, Inc. (HillHouse), a residential care facility in Bath, Maine. (Compl. ¶ 4.) According to the allegations in the complaint, on several occasions between September 24 and November 18, 2007, Virginia fell out of her bed. (Compl. ¶ 16.) Virginia's service plan called for "tab alarm – bed + chair, mat side of bed when in bed, ½ side rails when in bed" to address the "fall risk due to confusion, agitation." (Compl. ¶ 6.) The TAB alarm system is designed to sound an alarm when a resident falls out of bed. (Compl. ¶¶ 12-13.) HillHouse doctors did

1

not secure a doctor's order for the bed rail and never attached the alarm system properly. (Compl. ¶¶ 7, 15, 24-25.)

On the morning of November 20, 2007, the HillHouse staff found Virginia with her head in the bed rail, her body in the gap between the mattress and side bed rail, and her feet and/or bottom on the floor. (Compl. ¶ 22.) Virginia died of asphyxiation. (Compl. ¶ 26.) The TAB alarm was not properly attached and never sounded. (Compl. ¶ 24-25.)

The HillHouse staff that found Virginia Kenney trapped in the bed rail informed the HillHouse Director of Nursing and Administrator of their eyewitness account of finding Virginia Kenney entrapped. (Compl. ¶ 30.) One witness completed an incident report, in which the witness stated that the staff found Virginia Kenney with her head in the bed rail. (Compl. ¶ 31.) Another witness told the Administrator that it appeared Virginia Kenney had "hung herself." (Compl. ¶ 32.)

The plaintiffs allege HillHouse concealed the cause of Virginia's death from the Kenneys and others. (Compl. ¶ 33.) HillHouse staff told the Kenneys and others[1] that Virginia "died peacefully in her sleep." (Compl. ¶ 34.) Upon visiting Virginia Kenney after her death, the Kenneys noticed extensive bruising on Virginia's face and neck. (Compl. ¶ 36.) HillHouse staff told the Kenneys that Virginia Kenney's bruising was caused by a fall before her death, but the facility's documentation does not support that explanation. (Compl. ¶ 37.)

HillHouse staff reported Virginia Kenney's death to her attending physician and knew that the physician would use the information to determine Virginia Kenney's

---

[1] The Kenneys allege that HillHouse "told Virginia's hospice care provider that she 'died peacefully in her sleep' while 'in bed.'" (Compl. ¶ 35.) Additionally, HillHouse did not report the cause of Virginia Kenney's death to the State of Maine Bureau of Licensing and the State Medical Examiner. (Compl. ¶¶ 43-44.)

cause of death. (Compl. ¶ 39.) HillHouse staff also knew that her attending physician did not examine the body after death. (Compl. ¶ 40.) The plaintiffs allege that if HillHouse had accurately reported the cause of Virginia Kenney's death to her attending physician, he would have notified the State Medical Examiner. (Compl. ¶ 42.) HillHouse did not disclose the incident report to anyone outside the HillHouse facility. (Compl. ¶ 45.) The original incident report is "missing" from Virginia Kenney's chart. (Id.)

The Kenneys filed a complaint and allege the following: count I: negligence causing pre-death pain and suffering; count II: negligence causing death; count III: fraudulent concealment; count IV: negligent infliction of emotional distress; count V: intentional infliction of emotional distress; count VI: breach of contract; and count VII: punitive damages. With regard to the fraudulent concealment count, the Kenneys allege that the concealment caused the Kenneys "severe emotional distress, including but not limited to depression, feelings of upset, anger, guilt, and sorrow . . . ." (Compl. ¶ 59.) In the last paragraph of the complaint, which was realleged and incorporated into the count for fraudulent concealment, the plaintiffs demand judgment against the defendant for "compensatory damages, funeral expenses, medical expenses, punitive damages (separately as to both the death and post-death concealment), interest, costs, and such other and further relief as this Court deems just and appropriate." (Compl. at 12.)

HillHouse filed a motion for a judgment on the pleadings and move to dismiss the Kenneys' claims for fraudulent concealment in count III and negligent infliction of emotional distress in count IV. HillHouse argues that the Kenneys failed to state a claim upon which relief can be granted.

3

DISCUSSION

I.    Standard of Review

The Court must "examine the complaint in the light most favorable to the plaintiffs to determine whether it alleges the elements of a cause of action or facts entitling the plaintiffs to relief on some legal theory" and "assume that all factual allegations in the complaint are true." Stevens v. Bouchard, 532 A.2d 1028, 1030 (Me. 1987); see also Sounders v. Tisher, 2006 ME 94, ¶ 8, 902 A.2d 830, 832 (in determining whether a motion to dismiss should be granted, the court considers "the allegations in the complaint in relation to any cause of action that may reasonably be inferred from the complaint," and a claim will be dismissed only "when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." (quoting Johanson v. Dunnington, 2001 ME 169, ¶ 5, 785 A.2d 1244, 1246)).

II.    Fraudulent Concealment (Count III)

Hillhouse asserts that the Kenneys failed to state a claim for fraudulent concealment because they failed to allege any pecuniary damages.

> The elements of a claim of fraudulent concealment are: (1) a failure to disclose; (2) a material fact; (3) where a legal or equitable duty to disclose exists; (4) with the intention of inducing another to act or to refrain from acting in reliance on the non-disclosure; and (5) which is in fact relied upon to the aggrieved party's detriment.

Picher v. Roman Catholic Bishop of Portland, 2009 ME 67, ¶ 30, 974 A.2d 286, 295. Generally, pecuniary loss is an essential element of proof in fraud claims. Jourdain v. Dineen, 527 A.2d 1304, 1307 (Me. 1987). Pecuniary loss consists of "any loss of money or loss of something which money could acquire." BLACK'S LAW DICTIONARY 1167 (8th ed. 2004). "[D]amages for emotional or mental pain and suffering are not recoverable" as pecuniary loss. Jourdain, 527 A.2d at 1307. This rule is consistent with "the well-

4

established view that fraud actions are essentially economic in nature and serve to protect economic interests." Id.

The Kenneys allege that HillHouse concealed the cause of Virginia Kenney's death by stating that she died "peacefully in her sleep;" that the circumstances of her death was material to the Kenneys; and that HillHouse had a duty to disclose the circumstances of her death to the Kenneys as her children, legal representatives, power of attorney and signatory of the contract with HillHouse. (Compl. ¶¶ 55-57.) The Kenneys allege that they relied on HillHouse's representation to their detriment because they believed for several months that Virginia Kenney died "peacefully in her sleep." (Compl. ¶ 58.)

The Kenneys rely on Picher to argue that they need not allege pecuniary damages to state a claim for fraudulent concealment. In Picher, the Law Court, after addressing the defendant's defense of charitable immunity, found that the plaintiff stated a claim for fraudulent concealment. Picher, ¶ 30, 974 A.2d at 295-96. The plaintiff alleged that the defendant was on notice of its priest's propensity for sexual abuse, "breached its duty to disclose that knowledge, and affirmatively concealed the knowledge with the intent to mislead Picher and his family." Id., ¶ 30, 974 A.2d at 295. The Court then simply stated: "Picher and his family relied on the Bishop to Picher's detriment. Picher has stated a claim for fraudulent concealment." Id., ¶ 30, 974 A.2d at 296.

The Court did not specifically address whether Picher adequately pleaded that he suffered pecuniary damages as a result of the abuse. Though the Court did not specifically address pecuniary damages, Picher did not overturn Jourdain. Pecuniary damages remain an essential element of proof. Reading the complaint in the light most favorable to the plaintiffs and reading "the allegations in the complaint in relation to

5

any cause of action that may reasonably be inferred from the complaint," the court cannot conclude "beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." Sounders, 2006 ME 94, ¶ 8, 902 A.2d at 832.

III.    Negligent Infliction of Emotional Distress (Count IV)

In order to prevail on a claim for negligent infliction of emotional distress, a plaintiff must show "(1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was harmed; and (4) the breach caused the plaintiff's harm." Curtis v. Porter, 2001 ME 158, ¶ 18, 784 A.2d 18, 25. There is no "general duty to avoid negligently causing emotional harm to others." Id. The "limited circumstances" in which an individual has such a duty are either in "bystander liability actions" or when "a special relationship exists between the actor and the person emotionally harmed." Id. ¶ 19, 784 A.2d at 25. The Kenneys argue that HillHouse has a duty because of a special relationship between a medical provider and the family of a patient.[2]

1.  Special Relationship

In order for a defendant to be held responsible "for harming the emotional well-being of another," the Law Court has required "a particular duty based upon the unique relationship of the parties." Bryan R. v. Watchtower Bible & Tract Soc'y of New York, Inc., 1999 ME 144, ¶ 31, 738 A.2d 839, 848. The Law Court has recognized such a special relationship in narrow circumstances. See Bolton v. Caine, 584 A.2d 615, 618 (Me. 1990) (physician-patient relationship gives rise to duty to provide critical information to patient); Gammon v. Osteopathic Hosp. of Me., Inc., 534 A.2d 1282, 1285

_____

[2] HillHouse does not contest that the Kenneys set forth sufficient facts that HillHouse's alleged breach of duty caused the Kenneys severe emotional distress. HillHouse claims only that the Kenneys failed to state a claim that HillHouse owed them a duty of care.

6

(Me. 1987) (hospital and funeral home's relationship to the family of a decedent gives rise to a duty to avoid emotional harm from negligent handling remains); Rowe v. Bennett, 514 A.2d 802, 806-07 (Me. 1986) (unique nature of the psychotherapist-patient relationship gives rise to adhere to standards of care recognized by the profession); Angelica v. Drummond, Woodsum & MacMahon, P.A., 2003 Me. Super. LEXIS 197, *28 (Me. Super. Sept. 9, 2003) (attorney-client relationship can constitute a special relationship for purposes of recovery for negligent infliction of emotional distress); Leroy v. Maine Children's Home, 2002 Me. Super. LEXIS 182, *6-7 (Me. Super. Ct., Sept. 19, 2002) (finding special relationship between adoptive parents and an adoption agency). In this case, the Kenneys allege that a special relationship exists between a medical provider and the family of a patient that gives rise to a duty to communicate information regarding a patient's cause of death.

The Law Court "has proceeded cautiously in determining the scope of a defendant's duty to avoid inflicting emotional distress;" accordingly, the federal court was reluctant to "expand this relatively undeveloped doctrine beyond the narrow categories addressed thus far." Veilleux v. Nat'l Broad. Co., 206 F.3d 92, 131 (1st Cir. 2000); see Curtis, 2001 ME 158, ¶ 21 n. 18, 784 A.2d at 26 n. 18 (no special relationship between a pizza delivery person and a customer); Bryan R., 1999 ME 144, ¶¶ 31-32, 738 A.2d at 848-49 (no special relationship between a church and its members); Estate of Cilley v. Lane, 2009 ME 133, ¶ 22, 985 A.2d 481, 489 (between an ex-boyfriend and ex-girlfriend, there is no duty to rescue "absent a special relationship or conduct that has endangered another"); Richards v. Town of Eliot, 2001 ME 132, ¶ 34, 780 A.2d 281, 293 (no special relationship between police officers and an arrestee). Here, the complaint does not appear to allege a new form of special relationship.

7

In <u>Gammon</u>, the Law Court held that a son could bring an action for negligent infliction of emotional distress after discovering a human leg in a bag he believed to be his deceased father's belongings. <u>Gammon</u>, 534 A.2d at 1283. The Court relied on "the exceptional vulnerability of the family of recent decedents" which "makes it highly probable that emotional distress will result from mishandling the body." <u>Id</u>. at 1285.[3] Similarly, the Kenneys premise liability on the fact that as Virginia Kenney's family members, they were "exceptionally vulnerable" to emotional distress regarding the facts of her death.[4]

Contrary to HillHouse's claims, <u>Gammon</u> is not limited to the negligent mishandling of a corpse. Instead, <u>Gammon</u> applied a foreseeability analysis, noting that "a jury could conclude that the hospital and the mortician reasonably should have foreseen that members of [the deceased's] family would be vulnerable to emotional shock at finding a severed leg in what was supposed to be the decedent's personal effects." <u>Id</u>. The Court has "since expressly declined to apply a pure foreseeability analysis to determine whether a duty to avoid negligently causing emotional harm exists." <u>Curtis</u>, 2001 ME 158, ¶ 18 n. 15, 784 A.2d at 25 n. 15. Whether one party owes a duty of care to another is also "informed by 'the hand of history, our ideals of morals and justice, the convenience of administration of the rule, and our social ideas as to where the loss should fall.'" <u>Fortin v. Roman Catholic Bishop of Portland</u>, 2005 ME 57, ¶

---

[3] The Law Court has previously noted that a cause of action for negligent infliction of emotional distress may exist in the cases of "negligent transmission of death messages and the negligent mishandling of corpses." <u>Rubin v. Matthews Int'l Corp.</u>, 503 A.2d 694, 699 n. 5 (Me. 1986) (untimely delivery of a memorial stone does not fall under these exceptions under the previous rule that a claim for negligent infliction of emotional distress does not exist without either accompanying physical consequences or an independent underlying tort) (citations omitted). Neither the Kenneys nor the Court in <u>Gammon</u> relies on these "exceptional cases." <u>Gammon</u>, 534 A.2d at 1285.

[4] The Kenneys learned the truth regarding Virginia's death months later. That fact is not dispositive of their claim.

8

35, 871 A.2d 1208, 1220-21 (quoting Trusiani v. Cumberland & York Distribs., Inc., 538 A.2d 258, 261 (Me. 1988) and William L. Prosser, Palsgraf Revisited, 52 MICH. L. REV. 1, 15 (1953)); Cameron v. Pepin, 610 A.2d 279, 282 (Me. 1992) (the determination of the scope of a defendant's duty rests not only on foreseeability but also relevant policy implications).

The Kenneys allege in their complaint that HillHouse "knew or reasonably should have known" that its "false and misleading statements to Virginia's sons would cause foreseeable emotional distress." (Compl. ¶ 63.) Where "policy considerations favoring the imposition of liability for an injury resulting from the creation of an unreasonable risk of harm (i.e. factual foreseeability) dominate the analysis [,]... the issue of liability is properly characterized as a question of fact to be submitted to the fact finder." Cameron, 610 A.2d at 282-83; see also Bolton, 584 A.2d at 618 ("A factfinder could find it foreseeable that a patient might suffer psychological harm as the result of her physicians' breach of duty to inform her of critical information relevant to a potential life-threatening illness.").

The recognition of a duty under the circumstances of this case creates little or no additional burden because there already exists a duty by virtue of statutes and regulations. See Fortin, 2005 ME 57, ¶¶ 63-65, 871 A.2d at 1229-30 (finding that "the relationship between the diocese, its priest, and the State, as it pertains to nonconfidential information regarding child abuse, is already informed by the statutory reporting requirements established ..." by statute); Angelica, 2003 Me. Super. Ct. LEXIS 197 at *26 (relying, in part, on Bd. Of Overseers of the Bar v. Mangan, BAR 99-5 (Mar. 10, 2000) (Saufley, J.), a decision regarding attorney misconduct, for the inference "that there is a nexus between the duty to act in a manner not adverse to [the] client under M. Bar. R. 3.4(b)(1) and the duty not to cause the client emotional harm."). The Code of

Maine Regulations governing Level IV assisted living facilities, like HillHouse, have specific reporting requirements for certain incidents or changes to a resident's care. See 10-144 CMR Ch. 113, § 11.1.7; 10-144 CMR Ch. 113, § 12.2.[5] Additionally, by statute a death in an assisted living facility, other than one due to natural causes, must be reported. 22 M.R.S. § 3025(1)(E) (2010).[6] These regulations imply a duty of care in an assisted living facility to communicate with the legal representatives regarding a resident's care.

Finally, Leon Kenney, who contracted with HillHouse to provide for Virginia Kenney's care, alleges a direct contractual relationship with HillHouse. (Compl. ¶ 1.) The Superior Court has recognized a special relationship in "situations involving 'contractual services that carry with them deeply emotional responses in the event of breach.'"[7] Angelica, 2003 Me. Super. Ct. LEXIS 197 at *27 (citing Oswald v. LeGrand, 453 N.W.2d 634, 639 (Iowa 1990)). The Superior Court relied on the particular nature of the

---

[5] The plaintiffs cite to several sections in the Code of Maine Regulations. The first requires assisted living facilities to complete an incident report "for any resident who has sustained or caused a fall, injury or accident in the facility." 10-144 CMR Ch. 113, § 11.1.7. The Code also requires the facility to record the report in the resident's records and notify the resident's guardian or conservator if the incident is serious enough to require an examination and treatment by a licensed practitioner. Id. The second requires a facility to assess each resident periodically "or if there is a significant change in a resident's condition." 10-144 CMR Ch. 113, § 12.2. The resident's legal representative must "participate in or be consulted concerning the assessment." Id. In addition, section 5.25 mandates that health care providers report suspected violations of the regulations to the Department of Human Services. 10-144 CMR Ch. 113, § 5.25. Section 10.9.1 requires the administrator to ensure that all of the facility's staff members "are performing their duties consistent with all regulations and provisions of law." 10-144 CMR Ch. 113, § 10.9.1.

[6] Title 22, section § 3025(1)(E) of the Maine Revised Statutes states:

A medical examiner case may exist and must be reported . . . when remains are found that may be human and raise suspicion that death has occurred under any of the following circumstances: . . . Death while the person is a patient or resident of a facility of the Department of Health and Human Services or residential care facility maintained or licensed by the Department of Health and Human Services, unless clearly certifiable by an attending physician as due to specific natural causes . . . .

22 M.R.S. § 3025(1)(E) (2010).

[7] Recovery for emotional distress in contract cases is limited to those situations where serious emotional disturbance is a particularly likely result of a breach of the contract in question. Restatement (Second) of Contracts § 353; Rubin, 503 A.2d at 696.

attorney-client relationship, a contractual relationship based on trust. Angelica, 2003 Me. Super. Ct. LEXIS at *26. Moreover, the court noted that "[e]motional distress is likely where a client has been misled or has failed to receive critical information." Id.; see also Leroy, 2002 Me. Super. Ct. LEXIS 162 at *7 (finding a special relationship based on an adoption contract). Similarly, the Kenneys allege that they "entrusted" HillHouse with Virginia's care. (Compl. ¶ 64.) The Kenneys also allege that HillHouse represented "that it would be able to meet Virginia's care needs and that it would truthfully and accurately communicate significant events to them so that they could remain informed of their mother's condition and/or participate in making decisions relating to her care needs, including planning for and dealing with end-of-life issues." (Compl. ¶¶ 47(d), 51(d).) Viewed in a light most favorable to the Kenneys, "a special relationship might exist between the parties for the purposes of a motion to dismiss." Leroy, 2002 Me. Super. Ct. LEXIS 162 at *7.

### 2. Other Claims

Hillhouse asserts that the Kenneys are not entitled to damages for emotional distress because their claim is, in essence, a claim for negligent misrepresentation. (Def.'s Mem. at 9-10.) In Curtis, the Law Court held that where the separate tort does not allow recovery for emotional distress damages, "such as negligent misrepresentation claims, a plaintiff may not circumvent that restriction by alleging negligent infliction in addition to the separate tort." 2001 ME 158, ¶ 19, 784 A.2d at 26. Negligent misrepresentation is defined as:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

11

Rand v. Bath Iron Works Corp., 2003 ME 122, ¶ 13, 832 A.2d 771, 774 (quoting Restatement (Second) Torts § 552(1) (emphasis omitted)). A business relationship between the parties is essential to a claim for negligent misrepresentation. Contrary to HillHouse's claims, the Kenneys do not allege a claim for negligent misrepresentation because they do not allege that HillHouse's duty is premised on a business relationship.

HillHouse further contends that the Wrongful Death Act, codified in 18-A M.R.S.A. § 2-804, is the exclusive means of recovery for negligent infliction of emotional distress claim brought by the Kenneys in their capacities as personal representatives of Virginia Kenney's estate. (Def.'s Mem. at 8-9.) "[W]here the wrongful death statute applies . . . emotional distress claims may not be brought independently of the statute." Donald N. Zillman, et al., MAINE TORT LAW § 190.06, at 19-27 (1994). Section 2-804 provides an action when the death of a person results from a wrongful act, neglect, or default and allows "any damages for emotional distress arising from the same facts as those constituting the underlying claim . . . ." 18-A M.R.S. § 2-804(a) & (b). The Kenneys' emotional distress claims arise out of HillHouse's conduct after Virginia's death and not the same facts on which the wrongful death claim is based.

The entry is

> The Defendant's Motion for Judgment on the Pleadings on Counts III and IV of the Plaintiffs' Complaint is DENIED.

Date: /·26·//

Nancy Mills
Justice, Superior Court

12

F COURTS
ınd County
·eet, Ground Floor
ME 04101

BENJAMIN GIDEON ESQ
ALICIA CURTIS ESQ
BERMAN & SIMMONS
PO BOX 961
LEWISTON ME 04243-0961

COURTS
ınd County
reet, Ground Floor
, ME 04101

DAVID KING ESQ
RUDMAN & WINCHELL
PO BOX 1401
BANGOR ME 04402-1401