STATE OF MAINE                          SUPERIOR COURT
YORK, SS.                               CIVIL ACTION
                                        DOCKET NO. CV-14-137


LIDA ZAHARES and
NANCY PLAISTED,


Plaintiffs,


v.                                      **ORDER**


BRIAN R. JACOBS and
KATHERINE M. SAULNIER,


Defendants.


### I.   Background

### A. Procedural Posture

This action arises out of an incident in which Plaintiffs Lida M. Zahares and

Nancy A. Plaisted wrestled with the Defendants' dog as it mauled Zahares' dog to death.

Plaintiffs allege four counts in the complaint, including (1) strict liability, (2) negligence,

(3) negligent infliction of emotional distress, and (4) liability under Maine's dog bite

statute, 7 M.R.S. §§ 3961-3962-A, *et seq.* The Defendants have moved for summary

judgment arguing in part that Plaintiffs cannot recover damages for emotional injuries

resulting from the death of a pet.

### B. Facts

On April 22, 2013, Harley mauled Romie to death. (Def.'s S.M.F. ¶ 1.) Harley

was a bulldog owned by Defendant Brian Jacobs. (Def.'s S.M.F. ¶ 8.) Romie was a

Boston Terrier owned by Plaintiff Lida Zahares. (Def.'s S.M.F. ¶ 2.) Zahares and Nancy Plaisted are sisters; Saulnier is Jacobs' live-in girlfriend. (Def.'s S.M.F. ¶¶ 3-4, 10.)

On the day of the incident, Harley managed to escape from his crate in the Defendants' residence while Saulnier was home. (Def.'s S.M.F. ¶¶ 10-11.) At the time, Plaisted and four grandchildren were visiting Zahares at her home. (Def.'s S.M.F. ¶ 12.) Zahares had attached a leash to Romie's collar to take him for a walk when suddenly Harley appeared at the glass storm door of the kitchen and began slamming into the door. (Def.'s S.M.F. ¶¶ 13-14.) Harley then turned and ran away. When Plaisted opened the door to tell the grandchildren to take shelter inside a car, Harley managed to get inside. (Def.'s S.M.F. ¶ 16.) Harley proceeded to attack Romie in the kitchen. (Def.'s S.M.F. ¶ 17.) Zahares initially managed to remove Romie's head from Harley's mouth and placed him on the counter. (Pl.'s S.M. Addtl. F. ¶¶ 27-28.) Harley was able to reach Romie and continued to maul him; Plaisted used a kitchen knife to stab Harley repeatedly to no effect. (Pl.'s S.M. Addtl. F. ¶ 28.) After five to ten minutes, Zahares accepted Romie was dead and proceeded to bring him outside, with his leash and Harley still attached. (Pl.'s S.M. Addtl. F. ¶ 29.) Zahares and Plaisted physically struggled in their attempt to wrestle Harley away from Romie, Pl.'s Resp. D.S.M.F. ¶ 17, but neither suffered physical injuries from the attack. (Def.'s S.M.F. ¶ 18-19.) Plaisted was "terrified" by the incident and Zahares has had recurring nightmares. (Pl.'s S.M. Addtl. F. ¶¶ 32-33.)

## II. Discussion

### A. Summary Judgment Standard

"Summary judgment is appropriate when review of the parties' statements of material facts and the record evidence to which the statements refer, considered in the

2

light most favorable to the [nonmoving] party, demonstrates that there is no genuine issue of material fact that is in dispute and the [moving] party is entitled to judgment as a matter of law." *Remmes v. Mark Travel Corp.*, 2015 ME 63, ¶ 18, __ A.2d __.

There is no genuine dispute as to the facts. Rather, the narrow issue before the court is whether the Plaintiffs have suffered injuries that are recoverable as a matter of law.

### B. Negligent Infliction of Emotional Distress

A claim for negligent infliction of emotional distress tracks the elements of negligence: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was harmed; and (4) the breach caused the plaintiff's harm. *Curtis v. Porter*, 2001 ME 158, ¶ 18, 784 A.2d 18. There is no general duty to avoid causing others emotional harm and Maine courts have "recognized a duty to act reasonably to avoid emotional harm to others in very limited circumstances." *Id.* ¶ 19. The Law Court has held that such a duty ordinarily arises in two circumstances: (1) where there is a special relationship between the tortfeasor and the plaintiff; and (2) where the facts support a claim for bystander liability. *Brown v. Delta Tau Delta*, 2015 ME 75, ¶ 10, __ A.2d __ (citing *Curtis v. Porter*, 2001 ME 158, ¶¶ 18-19, 784 A.2d 18). A duty exists under a bystander theory if the plaintiff-bystander establishes he or she (1) was closely related to the victim, (2) was at or near the scene of the incident, and (3) suffered distress as a result of directly observing the incident. *Culbert v. Sampson's Supermarkets, Inc.*, 444 A.2d 433, 434-35 (Me. 1982) (mother could recover emotional distress for witnessing child choke on baby food); *Purty v. Kennebec Valley Med. Ctr.*, 551 A.2d

3

858, 859 (Me. 1988) (mother present during her child's birth could maintain claim for emotional distress resulting from hospital's negligence).

The issue presented is whether a plaintiff may recover damages for emotional injuries arising out of negligent harm (and in this case death) to the plaintiff's pet. The Restatement is clear that such injuries are ordinarily not compensable. Restatement (Third) of Torts: Phys. & Emot. Harm § 47 cmt. m (2012) ("While pets are often quite different from other chattels in terms of emotional attachment, an actor who negligently injures another's pet is not liable for emotional harm suffered by the pet's owner."). In the same vein, most jurisdictions have held that pets are personal property and damages are limited to compensation for fair market value; damages for emotional distress or lost sentimental value are not recoverable. *See, e.g.*, *Carbasho v. Musulin*, 217 W. Va. 359, 362, 618 S.E.2d 368, 371 (2005) (collecting cases); *Oberschlake v. Veterinary Assocs. Animal Hosp.*, 785 N.E.2d 811, 814 (Ohio App. 2003) (dogs are property thus emotional distress damages not available); *Koester v. VCA Animal Hosp.*, 624 N.W.2d 209, 211 (Mich. App. 2000) (same).

Furthermore, an essential element of proving bystander emotional distress is a "close familial relationship." *Michaud v. Great N. Nekoosa Corp.*, 1998 ME 213, ¶ 17, 715 A.2d 955. While pets are often considered part of the "family," there is no clear authority for holding that pets and owners share a "close familial relationship" to support a claim for bystander liability. Like the jurisdictions cited above, Maine treats pets as personal property. 7 M.R.S. §§ 3961, 3962-A; *see also Chapman v. Decrow*, 93 Me. 378, 45 A. 295, 298 (1899) ("By the common law, a dog is property, for an injury to which an action will lie.") Damage to personal property is generally calculated as: "(1) the

4

difference in value of the property before and after the actionable injury, or 2) the cost of repairing or restoring the property to its condition before the injury." Horton & McGehee, *Maine Civil Remedies* § 4-3(c)(7) at 67-68 (4th ed. 2004).

In line with the above, this court has in several cases rejected emotional distress claims brought by pet owners. *See, e.g., Hayes v. Lisbon Rd. Animal Hosp.*, 2014 Me. Super. LEXIS 222, *18 (Me. Super. Ct. Dec. 19, 2014) (Kennedy, J.) (emotional distress based on veterinarian's negligence that resulted in dog's death failed to state a claim); *Golt v. Caffrey*, OXFSC-CV-96-09 (Me. Super. Ct., Oxf. Cty., Mar. 17, 1999) (Warren, J.) (excluding evidence of emotional distress on the grounds that dog owner's failure to be physically present would have precluded recovery on a bystander theory even if dogs were treated as close family members).

This case involves a unique set of circumstances due to the violence of the episode and the fact the Plaintiffs were not simply mere bystanders, but directly and physically involved. The Plaintiffs engaged Harley in a bloody, physical wrestling match unlike any pet cases described above. This warrants further analysis into the principles that gave rise to the rules limiting emotional distress claims. The hurdle for the Plaintiffs, as in most NIED cases, is establishing the requisite duty. Determining whether a duty generally exists is often not determined by reference to rigid formulas or tests:

> [M]any factors interplay: the hand of history, our ideals of morals and justice, the convenience of administration of the rule, and our social ideas as to where the loss should fall. In the end the court will decide whether there is a duty on the basis of the mores of the community "always keeping in mind the fact that we endeavor to make a rule in each case that will be practical and in keeping with the general understanding of mankind."

*Cameron v. Pepin*, 610 A.2d 279, 282 (Me. 1992) *see also Brown*, 2015 ME 75, ¶ 9, __

5

A.2d __ (describing duty as "a multi-factored analysis that necessarily evokes policy-based considerations including the just allocation of loss").

In determining whether a defendant owes a duty to a particular NIED plaintiff, there is an important distinction between direct and indirect victims. *Champagne v. Mid-Me. Med. Ctr.*, 1998 ME 87, ¶ 6, 711 A.2d 842 ("We have recognized that the victim of negligent conduct has a legally protected interest in her psychic health, with different rules governing recovery depending on whether she is characterized as a 'direct' or an 'indirect' victim.") Plaintiffs here are properly characterized as direct victims because, notwithstanding the fact they did not suffer physical injury, they were "the object of the defendant's negligent conduct." *Id.* (citing *Gammon v. Osteopathic Hosp. of Me., Inc.*, 534 A.2d 1282 (Me. 1987)).

The distinction between direct and indirect victims can be traced back to several policy-based doctrines designed to limit emotional distress claims, including the so-called "zone of danger" rule. Under the zone of danger rule "the negligent tortfeasor is liable to those persons who suffer mental distress as a result of the defendant's conduct and are within the zone of risk or threat of physical harm." *Culbert v. Sampson's Supermarkets, Inc.*, 444 A.2d 433, 435 (Me. 1982). In *Culbert*, the Law Court declined to limit emotional distress recovery to plaintiffs within the "zone of danger" on the grounds such a rule would be unduly narrow, arbitrary, and would unjustly bar recovery for otherwise reasonably foreseeable plaintiffs.

Indeed, as was the policy rationale for the "zone of danger" rule, foreseeability is key to the "direct victim" duty analysis. In *Gammon*, the leading direct victim case in Maine, the plaintiff's father had died and the plaintiff picked up two bags from the

6

funeral home that purportedly contained his father's personal effects. When the plaintiff opened one of the bags at home, he found a bloodied, bluish human leg, which was severed below the knee. Believing the leg to be his father's, the plaintiff suffered significant shock and recurring nightmares. In reversing a directed verdict for the mortician and funeral home on the plaintiff's emotional distress claim, the Law Court held a duty existed as a matter of law because the defendants "reasonably should have foreseen" that the decedent's family members would suffer mental distress from discovering the limb among the personal effects. *Gammon*, 534 A.2d at 1285-86. The court declined to craft a more rigid rule, observing: "[n]o useful purpose would be served by more detailed analyses of our prior decisions or by consideration of whether the holdings of these cases follow a consistent trend." *Gammon*, 534 A.2d at 1284. The court remarked aptly that utilizing analogies risks creating "artificial devices" to limit claims with inconsistent results. The court's ultimate concern in evaluating emotional distress claims is to "protect against fraudulent claims and against undue burden on the conduct of defendants," which can be accomplished by reference to the fundamental principle of foreseeability. *Id.* at 1284-85. The court concluded that on the facts and circumstances, the harm was sufficiently foreseeable to impose a duty and thus created a triable claim for negligence.

While the Law Court has narrowed emotional distress liability in subsequent cases, *see, e.g.*, *Cameron v. Pepin*, 610 A.2d 279, 281 (Me. 1992); *Curtis v. Porter*, 2001 ME 158, ¶ 19, 784 A.2d 18; *see also* Paul F. Macri, *How the Law Court Uses Duty to Limit the Scope of Negligence Liability*, 53 Me. L. Rev. 503, 513-20 (2001) (discussing decisions post- *Culbert* and *Gammon*), the rules crafted in those cases limited recovery

for indirect victims. *Nelson v. Flanagan*, 677 A.2d 545, 547-48 (Me. 1996). Foreseeability remains the touchstone in direct victim cases. *See Michaud*, 1998 ME 213, ¶ 16, 715 A.2d 955 (direct victims establish a duty where the "defendant should have foreseen that mental distress would result from his negligence").

The undisputed facts establish that the Plaintiffs were directly threatened with physical harm resulting from the negligent conduct. The Plaintiffs bring claims for injuries arising not only from the harm to Romie, but also the distress of the entire incident. They were therefore direct victims. *Cf. Champagne*, 1998 ME 87, ¶ 7, 711 A.2d 842 (rejecting NIED claim by mother because negligence was directed at baby who was given to the wrong mother to breastfeed, not at the plaintiff-mother). The Defendants should have reasonably foreseen that their dog, with violent propensities, could not only attack and kill another dog in the neighborhood, but also threaten to harm neighbors and cause them emotional distress. *See Gammon*, 534 A.2d at 1285-86. Whether the Defendants should be held liable for the harm is ultimately for the factfinder to consider and decide.[1] That determination is wrapped up in greater questions of foreseeability and fairness. The court is satisfied that the Plaintiffs have met their threshold burden to establish duty at the summary judgment stage.

The entry shall be:

Defendant's motion for summary judgment is hereby DENIED.

---

[1] It bears emphasis that the Plaintiffs are only entitled to recover emotional damages attributable to the incident itself, not to the loss of Romie. The Defendants have the burden of proof to separate damages from compensable and non-compensable sources. *Compare Lovely v. Allstate Ins. Co.*, 658 A.2d 1091, 1093 (Me. 1995), *with Champagne v. Mid-Me. Med. Ctr.*, 1998 ME 87, ¶ 12, 711 A.2d 842. To the extent *Champagne* suggested plaintiffs have such a burden, if the Plaintiffs in this case prove liability at trial, placing the burden of separating out damages on the proven tortfeasor is more consistent with the principles enunciated in *Lovely*.

8

SO ORDERED.

DATE: June ___, 2015

_____
John O'Neil, Jr.
Justice, Superior Court

9

CV-14-137

ATTORNEYS FOR PLAINTIFF:
GORDON C AYER
MATTHEW J WILLIAMS
HODSDON & AYER
56 PORTLAND ROAD
KENNEBUNK ME 04043


ATTORNEY FOR DEFENDANT:
JOHN R VEILLEUX
NORMAN HANSON & DETROY LLC
P O BOX 4600
PORTLAND ME 04112